USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
PHOENIX LIGHT SF LIMITED, et al.,          :
                                           :
                               Plaintiffs,          :          14-CV-10104 (VEC)
                                           :
               -against-                   :          OPINION AND ORDER
                                           :
THE BANK OF NEW YORK MELLON, as Trustee,   :
                                           :
                               Defendant.           :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       In 2014, investors in RMBS trusts sued Defendant-Trustee for breach of contract, breach of fiduciary obligations, negligence, and violations of the Trust Indenture Act ("TIA"). On September 7, 2017, the Court granted Defendant's motion for summary judgment in part and denied it in part. Dkt. 201. On April 3, 2018, Plaintiffs voluntarily dismissed claims as to seven trusts. Dkt. 236. Today, claims as to ten trusts for breach of contract and TIA violations remain, and the parties have completed fact and expert discovery. The Court assumes familiarity with the rest of the facts underlying this case.

       On June 28, 2019, Plaintiffs and Defendant filed omnibus *Daubert* motions. Dkts. 291, 294. Plaintiffs' opposition to Defendant's motion, Dkt. 300, included new supporting declarations from Plaintiffs' experts Ingrid Beckles, Richard Bitner, Mark Adelson, Joseph Mason, and Bruce Spencer.[1] With permission from this Court, Defendant moved to strike portions of those declarations under Federal Rule of Civil Procedure ("Rule") 37(c)(1), or, in the

---

[1] The Court also refers to their expert reports throughout this Opinion. For ease of citation, the Court refers to the copies of the full reports attached as exhibits to Defendant's *Daubert* motion. *See* Houpt Decl. (Dkt. 293) Ex. 14 ("Beckles Report"), Ex. 15 ("Beckles Damages Report"), Ex. 2 ("Bitner Report"), Ex. 10 ("Adelson Report"), Ex. 22 ("Mason Report"), Ex. 18 ("Spencer Report").

alternative, to allow Defendant to re-depose Plaintiffs' experts. Dkt. 312. Defendant argues that the declarations offer new opinions, new bases for old opinions, and new qualifications in violation of Rule 26(b).

For the following reasons, the Court grants in part and denies in part Defendant's motion to strike and denies Defendant's alternative request to re-depose Plaintiffs' experts.

## DISCUSSION

Rule 37(c)(1) provides sanctions for a party's failure to comply with the expert discovery requirements of Rule 26. Rule 26(a)(2)(B) requires that reports from testifying experts contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "the witness's qualifications." Rule 26(e) requires that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." A party that fails to timely disclose or supplement an expert report is not allowed "to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing whether exclusion is appropriate, courts must consider four factors: (1) the explanation for the delay in providing the evidence; (2) the importance of the new evidence; (3) the potential prejudice to the opposing party; and (4) whether a continuance is more appropriate. *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93-CV-4001, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004).

As to expert declarations filed in response to a *Daubert* motion, several guiding principles have emerged. Courts must exclude such an expert declaration if it "expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279

2

(S.D.N.Y. 2011). But courts may consider evidentiary details that a declaration provides in support of opinions already expressed in the expert's report. *Lidle* ex rel. *Lidle v. Cirrus Design Corp.*, No. 8-CV-1253, 2010 WL 2674584, at *7 n.4 (S.D.N.Y. July 6, 2010). Thus, declarations that "merely amplify and provide more support for the opinions" are proper, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2016 WL 4077117, at *5 n.6 (S.D.N.Y. Aug. 1, 2016), including declarations that address concerns raised in a *Daubert* motion about the reliability and application of an expert's methodology, *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 43 (S.D.N.Y. 2014), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014). The key issue is whether the expert declaration is sufficiently "within the scope of the initial expert report," *Cedar Petrochemicals*, 769 F. Supp. 2d at 279, so that an opposing party is not "sandbagg[ed] . . . with new evidence," *Hass v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008).[2]

## I. Ingrid Beckles

Defendant first argues that the Beckles Declaration, Dkt. 303, changes opinions expressed in her Report about mortgage loan servicing. Defendant argues that the Beckles Report states that the servicing standards of government sponsored entities ("GSEs") "define" industry standards, Def.'s Br. (Dkt. 314) at 7, but in her Declaration, she asserts only that GSE standards are "usual and customary" and "influence" industry standards, Beckles Decl. at 4, 8. Defendant misquotes the Beckles Report and quibbles with semantically indistinguishable

---

[2] As an initial matter, the Court rejects Defendant's argument based on *Lightfoot v. Georgia-Pac. Wood Prod.*, LLC, No. 16-CV-244, 2018 WL 4517616, at *1 (E.D.N.C. Sept. 20, 2018), *order amended on reconsideration*, No. 16-CV-244, 2018 WL 6729636 (E.D.N.C. Dec. 21, 2018). Def.'s Reply at 2–3. That case is out-of-circuit and applied a stricter standard than the standard in this circuit. The court excluded the expert declarations simply because they responded to a *Daubert* motion and were not correcting inadvertent errors. *See Lightfoot*, 2018 WL 4517616, at *7 ("The critical issue . . . is that the declarations are made in response to defendants' *Daubert* motions and are not made either timely or for a stated purpose of correcting inadvertent errors or omissions in the original reports or depositions.").

3

phrasing. The Beckles Report states that GSE standards "*largely* define" and "*represent*" industry standard practices. Beckles Report ¶¶ 29, 33 (emphasis added). That characterization is not contradicted by her Declaration. Defendant argues that its experts had assumed that Beckles had taken the position that servicers must meet GSE standards. Def.'s Reply (Dkt. 317) at 9. That may be, but neither the Beckles Report nor the Beckles Declaration says that. Defendant cannot strike the Beckles Declaration based on a misunderstanding by its experts.

Defendant next argues that the Beckles Declaration offers new bases for her opinion that pressing servicers to remedy defective performance would have improved poor servicing practices within three to six months. Def's Br. at 8; *see* Beckles Damages Report ¶¶ 4-5. Defendant takes issue with the three examples Beckles offers in her Declaration to support that opinion. The examples come from Beckles' own experience at Freddie Mac, which she identified in her Report and during her deposition as the basis for her opinion. *See* Beckles Damages Report ¶ 5; Fitzgerald Decl. (Dkt. 316) Ex. 2 at 193:6–194:5. The Court will not strike the examples. Defendant could have probed Beckles' Freddie Mac experience during her deposition, *see, e.g.*, *In re Gen. Motors*, 2016 WL 4077117, at *5 n.6 (allowing same), but chose not to do so. The Court sees no reason to allow Defendant to reopen her deposition to rectify what might have been a tactical error. *See also* Fisher Decl. (Dkt. 318) Ex. 1 at 115:6-17:22.

Defendant lastly argues that the Beckles Declaration offers new opinions. Def.'s Br. at 8–9. In its *Daubert* motion, Defendant challenges the reliability of Beckles' methodology. Def.'s Mot. in Lim. (Dkt. 292) at 19–20. Defendant and its servicing expert have taken the position that because GSEs do not hold subprime loans, the Beckles Report compares GSE's non-subprime apples to BNY's subprime oranges. The Beckles Declaration responds by asserting that the GSEs held loans that shared relevant "subprime" attributes (she asserts that there is no formal, industry-accepted definition of "subprime loan"), and supports that assertion

4

with a citation to GSEs' SEC filings. Beckles Decl. ¶¶ 29-31. This response is within the scope of her opinion and appropriate for a supplemental declaration on a *Daubert* motion because it merely defends her methodology. *See Advanced Analytics*, 301 F.R.D. at 43 ("[Rule 26(a)(2)] does not require that the disclosures address the reliability of the principles and methods used or the reliability of the manner in which those principles and methods were applied in the case").

**II.     Richard Bitner**

Defendant argues that the Bitner Declaration, Dkt. 304, takes four new positions not previously disclosed in the Bitner Report about defects in loans he re-underwrote. Def.'s Br. at 9–11. But the opinions expressed in the Bitner Declaration are not new; they were previously disclosed in his Report, albeit not verbatim. It is not grounds to strike a declaration that it states an expert's opinion more explicitly. *Cedar Petrochemicals*, 769 F. Supp. 2d at 279.

The first allegedly new position challenged by Defendant, *see* Def.'s Br. at 9—that on average 53.8% of borrower's stated incomes were over the 90th percentile of salaries in comparable job categories in Bureau of Labor Statistics ("BLS") data, *see* Bitner Decl. ¶ 18— simply calculates information already contained in Exhibit B of the Bitner Report, *see* Fitzgerald Decl. Ex. 5. It will not be stricken because "[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009) (quotation omitted).[3]

---

[3]     Although some attorneys will say they chose to enter the legal profession because they are "bad with numbers," using the Bitner Declaration to perform basic math calculations appears to have been done to skirt the Court's page-limit requirement and not because the math involved was beyond Plaintiffs' attorneys' ken. Plaintiffs could have and should have done this math in their opposition brief. While paragraph eighteen of the Bitner Declaration could be stricken on that basis, the Court will not do so. Nevertheless, Plaintiffs are warned about using subterfuge to avoid page limits.

The second allegedly new position, *see* Def.'s Br. at 9–10—that BLS data is the best option available, *see* Bitner Decl. ¶ 22—is also a synthesis and summary of his deposition testimony, not a contradiction as Defendant asserts. *See* Hamburg Decl. Ex. 4, at 315:11–316:10. It will not be stricken.

The third allegedly new position, *see* Def.'s Br. at 10—what Defendant calls new support for Bitner's qualifications to opine on materiality, *see* Bitner Decl. ¶ 37—is, in fact, old support. Defendant argued in its *Daubert* motion that Bitner lacked relevant experience to opine on whether alleged breaches of representations and warranties were material to investors. Bitner responds in his Declaration, *id.*, that his loan underwriting experience—which was disclosed—qualifies him because the pertinent risk considerations that are important to investors and loan underwriters are identical. *See, e.g.*, *Emig v. Electrolux Home Prod. Inc.*, No. 06-CV-4791, 2008 WL 4200988, at *3 (S.D.N.Y. Sept. 11, 2008) (holding that an "affidavit that elaborates on [the expert's] experience, [and] his qualifications" in response to a motion to preclude should not be stricken); *cf. Roman v. Sprint Nextel Corp.*, No. 12-CV-276, 2014 WL 5026093, at *5 (S.D.N.Y. Sept. 29, 2014) (citing to expert declarations addressing qualifications to provide specific opinions).

Finally, the Bitner Declaration asserts that his four-person team, including himself, took about four weeks to re-underwrite 196 loans, Bitner Decl. ¶ 41; this does not, as Defendant asserts, contradict his deposition testimony. The testimony to which Defendant points reveals a muddled exchange about whom on Bitner's team was working when and on what. *See* Fitzgerald Decl. Ex. 7 at 30:8-19. It does not show a contradiction, let alone a contradiction that would warrant striking this portion of the Bitner Declaration. Defendant chose not to explore this issue in detail during Bitner's deposition. That was a tactical decision. But having made

6

that decision, Defendant cannot now complain that it is being sandbagged when more specific information is used to rebut an argument made in Defendant's *Daubert* motion.[4]

### III. Mark Adelson

Defendant argues that the Adelson Declaration, Dkt. 302, explains for the first time how his experience led to his opinion that certain disclosures would have pressured RMBS-transaction participants to comply with the governing agreements.[5] Def.'s Br. at 11; *see* Adelson Report ¶¶ 189, 197. Adelson is Plaintiffs' structured finance market expert and opines on hypothetical market reactions to remedial actions Defendant could have taken as an RMBS trustee. The Adelson Declaration discusses two events from his past experience to support his "market pressure" theory: (i) the National Century Financial Enterprise ("NCFE") fraud disclosure, and (ii) the Conseco Financial bankruptcy. Adelson Decl. ¶¶ 19-23. The Court will not strike this discussion because the two events are "evidentiary details for an opinion expressed in his expert report," not new opinions or even new bases. *Lidle*, 2010 WL 2674584, at *7 n.4.

The NCFE and Conseco events should not have caught Defendant by surprise. In his deposition, Adelson stated that he has "seen the market react to . . . bad news events plenty of times." Fitzgerald Decl. Ex. 9 at 248:2-11. Adelson then specifically cited to the NCFE and Conseco events and his role in drafting "autopsy reports" for them. *Id.* at 265:3-16. Defendant cites no authority for its argument that the Court must ignore Adelson's deposition testimony. Def.'s Br. at 12; Def.'s Reply at 2.

---

[4] Defendant also takes issue with paragraph twenty-nine of the Bitner Declaration for again usurping counsel's role in responding to Defendant's *Daubert* motion. The Court agrees and will strike it. This paragraph simply cites to portions of Bitner's deposition to rebut Defendant's argument. That is properly done by attorneys in their legal briefs, not by the expert in a separate declaration.

[5] Defendant's primary argument addresses Part I.B of the Declaration.

Rule 26(a)(2) does not require Adelson to discuss every anecdote from his past experience that would support the opinions in his Report. *See, e.g.*, *Joseph S. v. Hogan*, No. 06-CV-1042, 2011 WL 2848330, at *4 (E.D.N.Y. July 15, 2011) ("Nothing in Rule 26(a)(2) requires the expert report to contain all of the supporting data within its four corners so long as the report clearly explains its methodology . . . ."). This includes the NCFE and Conseco events, especially when prejudice to Defendant is minimal because Adelson raised the events in his deposition.[6]

## IV. Dr. Joseph Mason

Defendant argues that the Mason Declaration, Dkt. 305, changes the assessment contained in his Report of how a settlement that Defendant reached with Countrywide (the "Countrywide Settlement") relative to one trust at issue in this case figured into his damages model. Def.'s Br. at 13; *see* Mason Report ¶¶ 37-38. But Defendant does not explain how Mason changed his position, and the Court does not see a change in position. The Mason Declaration explains that Mason's model reflects the funds Plaintiffs received from the Countrywide Settlement, *i.e.*, the damages the Mason Report calculates are *less* than what they would have been if Mason had ignored the settlement. *See* Mason Decl. ¶ 8. Although this explanation is not responsive to BNYM's argument in its *Daubert* motion that Mason should not have calculated damages from loans contained in the trust that were subject to the Countrywide Settlement (it appears that the parties are talking past each other), that is not a basis to strike this

---

[6] Part I.A of the Adelson Declaration will, however, be stricken because it circumvents the Court's page limits imposed on the parties' *Daubert* motion briefing. It offers no helpful exegesis or clarification, but just cites and copies material directly from his Report. This did not need to come from Adelson; Plaintiffs' counsel should have done this in their brief.

8

portion of the Mason Declaration. The Mason Declaration appropriately, albeit not particularly effectively, addresses a challenge to the reliability of his methodology.[7]

Defendant next argues that the Mason Declaration takes the new position that his damages model produces the same result under Plaintiffs' theory of liability (that defective loans should have been repurchased when the defects were discovered) as under his Report's assumed theory of liability (that defective loans should have been repurchased upon default). Def's Br. at 13–14; *see* Mason Report ¶ 71. Relatedly, Defendant also argues that the Mason Declaration offers a novel justification for his model's assumption that repurchases would occur on the date of liquidation. Def.'s Br. at 14. The Mason Declaration responds to Defendant's criticism of the reliability of his methodology by further elaborating how his modeling assumptions fit Plaintiffs' theory of liability. Mason Decl. ¶¶ 16-20. The Court will not strike this portion of his Declaration because Mason has not altered his method for calculating damages or any underlying assumptions; he has been steadfast on "topics [that] were covered in varying levels of detail in [his] initial report" and deposition. *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 378 (S.D.N.Y. 2014); *see* Mason Report ¶¶ 24-38, 64, 69-70.

## V.     Bruce Spencer

Defendant argues that the Spencer Declaration, Dkt. 306, contradicts his deposition testimony. Def.'s Br. at 14–15. The Court disagrees. Plaintiffs asked Spencer to opine on various damages issues. According to Defendant, Spencer admitted in his deposition to blindly relying on a consulting firm to select the control-group data set used in his statistical analysis; in

---

[7]     Although this portion of the Mason Declaration roughly repeats both his deposition testimony and Plaintiffs' argument in opposition to BNYM's motion, it does not offer additional legal argument to circumvent briefing page limits. So the Court will not strike it on that ground. But the Court will strike paragraph twelve of the Mason Declaration for the same reasons discussed *supra*.

his Declaration, Spencer denies that he blindly relied on his consultants and elaborates on his and the consultants' respective tasks in selecting the control group. Spencer Decl. ¶¶ 14-20.

The deposition testimony on which Defendant relies for its argument that Spencer blindly relied on his consultants is not contradicted by the Spencer Declaration. Spencer testified that Beckles "identif[ied] . . . the data set" and that he "presume[d] someone at [the consulting firm] [identified the particular data file]." Hamburg Decl. Ex. 7 at 76:15–77:12. This testimony does not show, as Defendant contends, that Spencer did not know who selected the data set. And it does not contradict the statement in his Declaration that the consulting firm "download[ed] the various data files." Spencer Decl. ¶ 18; *see* Hamburg Decl. Ex. 7 at 75:10–78:9. Defendant concedes that the Spencer Report disclosed that he directed the consulting firm's staff and does not argue that Rule 26(a) required Spencer to disclose how he managed the consulting firm and divvied up the tasks of choosing a control-group data set. *See* Def.'s Reply at 10. Defendant could have, but did not, question Spencer about how he supervised the consulting firm during Spencer's deposition.

Defendant's next argument repeats its argument about the inappropriateness of Plaintiffs' experts now asserting that GSEs held loans considered "subprime." Def.'s Br. at 16. For the reasons discussed *supra*, the Court will not strike paragraph twenty-four of the Spencer Declaration.

Lastly, Defendant lists several "rebuttal opinions" from the Spencer Declaration which "are found in none of Spencer's reports." Def.'s Br. at 17. But Defendant provides no reason and cites no authority showing that the Spencer Report had to address the challenges that Defendant has now raised in its *Daubert* motion. Just because Defendant blanketly asserts that they are new does not mean the Court must strike them. *See, e.g.*, *Advanced Analytics,* 301 F.R.D. at 43 (holding that plaintiff could not have foreseen certain issues raised after the close of

discovery on a *Daubert* motion); *Harkabi v. SanDisk Corp.*, No. 08-CV-8203, 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012) ("The purpose of an expert's report is not to replicate every word that the expert might say on the stand, but to convey the substance of the expert's opinion so that the opponent will be ready to rebut, cross-examine, and to offer a competing expert." (quotation omitted)).

## CONCLUSION

Defendant's motion to strike is GRANTED in part and DENIED in part. The Court strikes Part I.A of the Adelson Declaration, paragraph twenty-nine of the Bitner Declaration, and paragraph twelve of the Mason Declaration.

Briefing on Defendant's omnibus *Daubert* motion will resume. Defendant's reply in support of its omnibus *Daubert* motion is due no later than December 12, 2019.

**SO ORDERED.**

**Date: November 13, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**