

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**Christopher J. Houpt**
Direct Tel +1 212 506 2380
Direct Fax +1 212 849 5830
choupt@mayerbrown.com

June 18, 2020

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

Re:     *Phoenix Light SF Limited et al. v. The Bank of New York
        Mellon,* No. 14-cv-10104 (S.D.N.Y.)

Dear Judge Caproni:

   We represent Defendant The Bank of New York Mellon ("BNYM") in the above-captioned matter. We write pursuant to this Court's order dated May 28, 2020 (ECF No. 352) ("Order") granting reconsideration of its opinion and order dated March 20, 2020, and seeking supplemental briefing addressing whether Plaintiffs' expert, Dr. Joseph Mason, should be permitted to amend his opinions in a manner consistent with the Order.

**I.      THE ORDER PROPERLY APPLIES TO ALL COUNTRYWIDE SETTLEMENT
         TRUSTS.**

   Plaintiffs begin by asking the Court to modify the Order to allow Mason to continue double-counting settlement and repurchase recoveries on trusts other than CWALT 2006-OA3. Plaintiffs argue that "BNYM did not argue that any 'repurchase claims' other than those associated with loans in CWALT 2006-OA3 identified in the Baupost Letter were 'settled.'" ECF 360 at 1. That isn't true. Our original *Daubert* motion made only one reference to that trust, to point out that Mason assumed that all repurchases based on the Baupost letter would not have occurred until after the settlement was signed. ECF 292 at 29. And in that same paragraph, we showed that the settlement release covered not only claims based on representation and warranty breaches, but also those based on "(ii) the documentation of the Mortgage Loans held by the Covered Trusts . . . including with respect to alleged defective, incomplete, or non-existent documentation." ECF 292 at 29 (quoting Settlement Agreement). We referred to the "trusts" in the plural and devoted a footnote to the post-settlement repurchase protocol for document defects, and Mason's assumption that the Trustee could have put back loans before the settlement and then "continued to put back loans even after the settlement was signed." *Id.* at 30. Our reply did not mention the OA3 trust at all, and referred to the modeling of "additional repurchase proceeds on almost every defaulting loan" (ECF 320 at 18), a statement that obviously was not limited to the 156 Baupost loans that Bitner found defective. And, when Dr.

*Phoenix Light SF Limited et al. v. The Bank of New York Mellon*,
No. 14-cv-10104 (S.D.N.Y.)
The Honorable Valerie E. Caproni
June 18, 2020
Page 2

Sabry tried to correct for Bitner's error, she did so on all of the Countrywide trusts, and we cited that result in our reconsideration motion. ECF 340 at 1.

Plaintiffs attempt to rationalize limiting the Order to a single trust based on their misunderstanding of the Countrywide Settlement. That agreement does not "differentiate[] among claims based on" representations and warranties and those based on documentation (ECF 360 at 2)—it lists them both, ensuring that they are both released. The assertion that the settlement contemplates "further repurchases of loans with document defects" (*id.*) is irrelevant here. As noted, paragraph 9 releases all document defect claims *in the PSAs*—the claims that the Complaint says BNYM should have enforced.

Plaintiffs refer to a repurchase remedy, found in the Settlement Agreement, for (a) loans with both Mortgage and Title Policy defects where (b) "by reason of" the defects, the trusts cannot "foreclos[e] as a first-lien holder." ECF 293-25 at 31. But that that category of repurchase claims was created under the Settlement Agreement, not under the PSAs, and plaintiffs have never pleaded that Countrywide breached that (or any) part of the settlement, or that BNYM breached a duty to enforce the settlement. And Beckles does not purport to identify any loans that would have been subject to that new remedy—she does not identify loans with the relevant combination of defects, and she made no effort to determine whether any defect prevented foreclosure. Thus, what Mason models is simply the repurchase of every loan with any document defect, precisely the claim that the settlement released. There is no reason to distinguish his approach as between document defects and representation and warranties. Both assume ongoing, PSA-based recovery for claims that were released in the settlement.

Plaintiffs' request to "clarify" the Order is really an attempt to modify it; nothing in the Order suggests that the Court was limiting its decision to the OA3 trust.

## II.   PLAINTIFFS' REQUEST TO AMEND MASON'S REPORT SHOULD BE DENIED.

Plaintiffs have failed to show good cause for modifying the operative scheduling order to allow Mason to amend his expert report. Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, a schedule may be modified "only for good cause and with the judge's consent." "A party fails to show good cause when the request for an extension rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks omitted).

This is not a "motion to preclude supplemental opinion[]." ECF 360 at 3. The Court granted BNYM's motion to exclude Mason's report as it was written; Mason has not even proposed an amended report. If Plaintiffs are seeking to amend, they must demonstrate good cause, not BNYM. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("The burden of demonstrating good cause rests with the movant."). This initial defect notwithstanding, Plaintiffs have failed to demonstrate good cause for two independent reasons.

*Phoenix Light SF Limited et al. v. The Bank of New York Mellon*,
No. 14-cv-10104 (S.D.N.Y.)
The Honorable Valerie E. Caproni
June 18, 2020
Page 3

*First*, Plaintiffs' request depends on recasting everything that has happened on this issue to date. Plaintiffs submit that they should be permitted to amend Mason's report because he "could not have been expected to anticipate this Court's legal ruling," which they characterize for the first time as a "rejection of Plaintiffs' legal theory" that came out of the blue. ECF 360 at 3, 4; *id.* at 3 (referring to "Plaintiffs' contention that BNYM should have gotten settlement proceeds and forced additional repurchases"). On reconsideration, we argued that the problem was not that Plaintiffs' theory of the case was wrong (an issue that was irrelevant for that specific motion), but that Mason did not model that theory—"Plaintiffs' scenario is 'repurchase, no settlement.' But Mason assumed a third scenario: 'repurchase and settlement.'" ECF 340 at 3.

This is the first time that Plaintiffs have ever stated that their "legal theory" involves a duty to *both* obtain repurchases from Countrywide *and* also settle claims for failure to repurchase. As they note, "BNYM did not raise this argument in a summary judgment motion" (ECF 360 at 4 n.5), but we certainly would have if we had any inkling that Plaintiffs were actually asserting that theory. Before this letter, they have consistently described the enforcement and settlement as mutually exclusive. *See, e.g.*, ECF 137 at ¶¶ 264-65 ("a reasonably diligent trustee would have demanded" repurchase; "Instead, BNY Mellon agreed to a settlement"; *see also* ECF No. 300 at 30 ("Instead of taking the actions Plaintiffs contend were required, BNYM entered into a global settlement."). The belated effort to embrace the "repurchase and also settle" theory serves only to mischaracterize the Court's ruling and cast it as an unavoidable surprise, rather than the result of an avoidable error by Mason.

That effort is understandable, because Plaintiffs offer authority only for the proposition that an expert may amend to conform damages calculations to a legal ruling, not to simply correct his own overreaching or miscommunication with Plaintiffs' counsel. *See* ECF 360 at 4 (citing *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 1982963, at *2 (S.D.N.Y. Apr. 24, 2020), *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *4 (N.D. Cal. Aug. 15, 2016), and *In re Novatel Wireless Sec. Litig.*, 2013 WL 12144150, at *2 (S.D. Cal. Oct. 25, 2013)).

In *Valassis* and *Novatel*, the courts permitted amendment to allow the damages opinion to reflect a ruling on summary judgment. *Valassis*, 2020 WL 1982963, at *1; *Novatel*, 2013 WL 12144150, at *3. In *Finjan*, the court had excluded expert analysis that double- or triple-counted patent royalty bases, finding that such a damages methodology "is not possible under patent law." *Finjan*, 2016 WL 4268659, at *4. Similarly, the *Valassis* court permitted a second amendment so that the report properly disaggregated the effects of commissions that were lawful, in accordance with substantive antitrust law. *Valassis*, 2020 WL 1982963, at *1. By contrast, the Order simply finds that Mason's damages methodology "is not grounded in reality." ECF 352 at 4.

Plaintiffs had four years to come up with a theory of the case and a damages opinion to match, and they cannot "remedy[] any strategic miscalculations [they] may have made by belatedly seeking to supplement or amend those reports." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2019 WL 468809, at *3 (N.D. Cal. Feb. 6, 2019) (internal quotation marks and alterations omitted); *see also Hernandez v. Frazier*, 2012 WL 12895541, at *9 (W.D. Tex. Oct.

*Phoenix Light SF Limited et al. v. The Bank of New York Mellon*,
No. 14-cv-10104 (S.D.N.Y.)
The Honorable Valerie E. Caproni
June 18, 2020
Page 4

5, 2012) (denying plaintiffs' motion for leave to amend expert report based on evidence previously known to plaintiffs).

**Second**, even if Plaintiffs had provided a better justification for their proposed amendment, the prejudice to BNYM is great. Even without a trial date, disruption of the schedule "is not harmless." *See Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (finding untimely disclosure of expert witness was not harmless "even though the ultimate trial date was still some months away" where the deadlines for completing discovery and for filing motions for summary judgment had expired); *see also Carson Harbor Village, Ltd. v. Unocal Corp.*, 2003 WL 22038700, *3 (C.D. Cal. Aug. 8, 2003) (finding submission of untimely expert evidence would substantially prejudice defendants because they would have incurred significant expenses in deposing the proffered expert and in preparing an appropriate expert rebuttal and would have suffered from prolonged proceedings if it were allowed).

Plaintiffs argue that BNYM's rebuttal expert, Dr. Sabry, "prepared her own analysis that purportedly removes the impact of the Countrywide Settlement." ECF 360 at. 5. But that report only proves the point—Sabry used three different scenarios to account for the effect of Plaintiffs' counter-factuals on the Countrywide Settlement. The first "assum[ed] that there would be no repurchases for loans that Dr. Mason assumed would have been put back after June 28, 2011— the date the Countrywide Settlement Agreement was signed." Sabry Rebuttal Report (ECF No. 293-9) ¶ 41. The second "assume[d] that there would be no further proceeds from the Countrywide Settlement" and that "collateral principal payments and subsequent recoveries in the month of the Countrywide distribution would be reduced by the settlement allocable share that the relevant loan groups were entitled to." *Id.* ¶ 42. And in the third, Sabry "correct[ed] for the error of not accounting for actual putbacks" by "reduc[ing] the Countrywide Settlement distributions by Dr. Mason's but-for repurchases between the signing date and the actual settlement distribution dates in 2016 and 2017." *Id.* ¶ 43.

Plaintiffs do not state which, if any, of these scenarios Mason would adopt or say anything else about the proposed new report. What they do say is that "Mason could remove all settlement proceeds from the model or he could" do something totally different. ECF 360 at 3. As Plaintiffs note, the $8.5 billion settlement was allocated among trusts based on each trust's losses (both past and future), and their repurchase strategy would have reduced those losses for these trusts. Lttr. 3. Thus, the latter approach would require reconstructing, for the but-for world, the lifetime losses that would have been *forecast* for each trust in 2015, an enormous undertaking that seems certain to require new rebuttal reports, new depositions, and possibly new motions if Mason gets it wrong again. The complexity of this task is further demonstrated by the fact that Plaintiffs are asking this Court to specify exactly how Mason's damages analysis should be amended. Simply put, if Plaintiffs cannot figure out how to amend Mason's report without judicial direction, then the process must be more complicated than they suggest.

In light of Plaintiffs' failure to provide a damages report that is consistent with its longstanding legal theory of BNYM's purported liability, we respectfully submit that the Court should not permit Plaintiffs to amend Mason's damages calculation. In the alternative, should the

*Phoenix Light SF Limited et al. v. The Bank of New York Mellon*,
No. 14-cv-10104 (S.D.N.Y.)
The Honorable Valerie E. Caproni
June 18, 2020
Page 5

motion to amend be granted, BNYM respectfully requests the right to seek costs for any rebuttal or deposition that is required by Mason's amended report.

Respectfully submitted,

/s/ Christopher J. Houpt
Christopher J. Houpt

cc:    Counsel of record