USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/7/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
PHOENIX LIGHT SF LIMITED, et al., :
:
Plaintiffs, :
:
:
-against- :
:
THE BANK OF NEW YORK MELLON, as Trustee, :
:
Defendant. :
-------------------------------------------------------------- X

14-CV-10104 (VEC)

OPINION AND ORDER

-------------------------------------------------------------- X
PHOENIX LIGHT SF DAC and KLEROS PREFERRED FUNDING V PLC, :
:
Plaintiffs, :
:
:
-against- :
:
THE BANK OF NEW YORK MELLON, :
:
Defendant. :
-------------------------------------------------------------- X

18-CV-1194 (VEC)

VALERIE CAPRONI, United States District Judge:

On January 18, 2021, this Court stayed these two cases pending the Second Circuit's resolution of an appeal in a virtually identical case. *See* Order, Dkt. 397, No. 14-CV-10104; Dkt. 162, No. 18-CV-1194. In light of the Second Circuit's decision in *Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312, 2021 WL 4515256, at *1 (2d Cir. Oct. 4, 2021) ("*U.S. Bank IV*"), the Court concludes that Plaintiffs lack prudential standing in either of these cases; both cases are, therefore, dismissed.

**BACKGROUND**

These cases were brought as part of a cascade of actions in which trustees of residential mortgage-backed securities trusts ("RMBS Trusts") were sued in the wake of the 2008 housing

market collapse. Plaintiffs are special purpose entities that issued collateralized debt obligations ("CDOs"). Pls. Rule 56.1 Counterstmt., Dkt. 379 at 8.[1] The CDOs were secured by certificates that had been issued by the RMBS Trusts that held residential mortgage loans. Defendant Bank of New York Mellon ("BNYM"), among other banks that Plaintiffs have sued in separate actions, served as trustee for a number of RMBS trusts. Fourth Am. Compl., Dkt. 137 ¶¶ 1–3. In the 2014 action, Plaintiffs alleged that BNYM breached its duties as RMBS Trustee in connection with 27 securitization trusts, Compl., Dkt. 1 ¶ 1,[2] and in the 2018 action they allege that BNYM breached its duties as Master Servicer for one securitization trust, Compl., Dkt. 10 ¶¶ 1–3, No. 18-CV-1194.[3]

Relevant to whether they have prudential standing is the fact that Plaintiffs, which issued CDO notes backed by RMBS certificates that they acquired from third parties, transferred the RMBS certificates to CDO Indenture Trustees at the time the CDOs were sold. Pls. Rule 56.1 Counterstmt. at 10–13. Before the 2014 lawsuit was filed, Plaintiffs had collectively asked the CDO Indenture Trustees to assign the right to commence litigation against the RMBS Trustees, including BNYM, to Plaintiffs. *See id.* at 13–14. Plaintiffs received the requested assignments after bringing the 2014 case but prior to commencing the 2018 lawsuit. *Id.*; *see generally*

---

1 Unless otherwise specified, all citations are to the docket in No. 14-CV-10104. In addition, all citations to the parties' Rule 56.1 statements refer to page numbers and not paragraphs.

2 The number of securitization trusts now at issue are only 20 as certain claims have been dismissed. *See* Fourth Am. Compl. ¶¶ 1–3.

3 The claims brought in the 2018 lawsuit were originally part of the 2014 lawsuit. On November 15, 2017, after discovering that it had erroneously admitted that it was the trustee of the FBLC 2005-1 Trust when it was actually the master servicer of that trust and not its trustee, BNYM moved to sever claims against it arising out of its actions or inactions related to that trust. *See* Not. of Mot., Dkt. 216; Def. Mem., Dkt. 220 at 1. The Court granted BNYM's motion to sever on February 1, 2018, Order, Dkt. 229, and ordered Plaintiffs to file a new complaint containing only claims related to BNYM's role as master servicer for that trust.

Compl., Dkt. 10, No. 18-CV-1194.[4] The granting clauses in the CDO indentures were identical or nearly identical in all cases arising from the RMBS trusts. Def. Rule 56.1 Reply, Dkt. 386 at 17–21.[5]

In 2021, the Second Circuit upheld Judge Broderick's determination that all the same Plaintiffs here, save for one, lacked prudential standing in a case against a different bank based on the same indentures and assignments. *U.S. Bank IV*, 2021 WL 4515256, at *1. It is that determination that guides the Court's consideration of whether Plaintiffs have standing in these cases. Following the Circuit's decision in *U.S. Bank IV*, this Court ordered the parties to brief the status of these cases in light of that decision. *See* Order, Dkt. 399; Def. Mem., Dkt. 400; Pls. Opp., Dkt. 401; Def. Reply, Dkt. 402. BNYM also submitted a supplemental letter informing the Court of a relevant report and recommendation ("R&R") issued in December 2021 in yet another RMBS case, which Plaintiffs argue is distinguishable. *See* Dkts. 405–406.

The procedural posture of the two cases before this Court differs: the 2014 action is at the summary judgment stage (and prudential standing has been raised by Defendant in its motion for summary judgment), while the 2018 action was in discovery at the time of the Court's stay. Although the issue of standing has not yet been raised in the 2018 action, in this Circuit, because prudential standing is a matter of subject-matter jurisdiction, it can be raised by the Court *sua sponte*. *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (citing *Warth v. Seldin*,

---

[4] The same request and assignments underlie the 2014 and 2018 actions. Compl. ¶¶ 23–24, No. 18-CV-1194.

[5] Although Plaintiffs disputed the Defendant's proposed statement of undisputed fact that the granting clause in the indentures transferred their right to sue the RMBS Trustees to the CDO Indenture Trustees, in their Rule 56.1 counterstatement in the 2014 action they do not contest that the granting clauses were identical or nearly identical in each indenture. *See* Pls. Rule 56.1 Stmt. at 9, 9 n.4; Def. Rule 56.1 Reply at 17–21.

422 U.S. 490, 500 (1975)).[6] As is also relevant here, a district court may raise issue preclusion *sua sponte* even if the defense has not been raised. *Rosenberg v. Shemiran Co., LLC*, No. 20-CV-2259, 2020 WL 1953627, at *2 (S.D.N.Y. Apr. 22, 2020) (collecting cases).[7]

## DISCUSSION

### I. Legal Standard

Issue preclusion exists where: (1) the identical issue was raised in a previous proceeding; (2) that identical issue was actually litigated and decided in the previous proceeding; (3) the party against whom preclusion is invoked had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (citation omitted).

While lack of subject-matter jurisdiction is not a merits-based decision and therefore is not accorded preclusive effect, *see Thompson*, 15 F.3d at 253, the factual issues the prior court decided in reaching a determination regarding subject-matter jurisdiction do have preclusive effect. *Rosenberg*, 2020 WL 1953627, at *3 (citations omitted). As a result, courts in this District have "applied collateral estoppel to the issue of standing." *Hollander v. Members of Bd.*

---

[6] The Second Circuit allows the Court to "assume Article III standing and address the alternative question of whether a party has prudential standing" if both Article III and prudential standing are contested, as is the case here. *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014) (internal quotation marks and citation omitted).

[7] Issue preclusion must typically be raised in a party's answer or it is considered waived. *Rosenberg*, 2020 WL 1953627, at *2. BNYM raised issue preclusion as to the district court decision underlying *U.S. Bank IV* in its summary judgment motion in the 2014 action. Def. Rule 56.1 Supp. Stmt., Dkt. 372 at 6. It could not have raised the issue in the 2018 action at the time of its answer on March 2, 2018, *see generally* Answer, Dkt. 23, No. 18-CV-1194, because the underlying district court decision was not issued until March 18, 2020. Although BNYM failed to raise the issue in its subsequent Amended Answer, *see* Dkt. 161, No. 18-CV-1194, there is no absolute bar to the Court's *sua sponte* consideration of issue preclusion. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (extending holding that courts may consider res judicata *sua sponte* to related doctrine of issue preclusion) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)).

*of Regents of Univ. of the State of New York*, No. 10-CV-9277, 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011), *aff'd*, 524 F. App'x 727 (2d Cir. 2013).

Standing is, of course, a threshold issue before a federal court may hear the merits of any case, *Thompson*, 15 F.3d at 248 (citing *Warth*, 422 U.S. at 500), and plaintiffs have the burden of demonstrating that they have both Article III and prudential standing, *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84–85 (2d Cir. 2014).

## II. The Second Circuit's Decision in *U.S. Bank* Is Issue-Preclusive

The facts underlying *U.S. Bank IV* are largely identical to the facts underlying these cases except that the trustee whose actions or inactions were at issue was U.S. Bank National Association ("U.S. Bank"). All Plaintiffs before this Court, save for one, sued U.S. Bank, a trustee of certain securitization trusts, for breach of contract in connection with its duties as an RMBS Trustee. Plaintiffs brought the case despite having previously assigned their interest in the RMBS certificates to CDO Indenture Trustees. *U.S. Bank IV*, 2021 WL 4515256, at *1. Because Plaintiffs assigned away all of their interests in those certificates, the district court granted U.S. Bank's motion to dismiss, holding that the plaintiffs lacked standing. *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116, 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015) ("*U.S. Bank I*"). Plaintiffs then attempted to obtain standing by asking the indenture trustees to assign the right to pursue claims against the RMBS Trustees back to them. On a motion for summary judgment, Judge Broderick found plaintiffs lacked standing due to New York State's champerty law, which prevents entities from assigning claims for the purpose of bringing litigation. *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116, 2020 WL 1285783, at *11–*16 (S.D.N.Y. Mar. 18, 2020) ("*U.S. Bank II*"), *recons. denied*, No. 14-CV-10116, 2020 WL 4699043 (S.D.N.Y. Aug. 12, 2020) ("*U.S. Bank III*"), *aff'd*, 2021 WL 4515256

(2d Cir. 2021). Although *U.S. Bank II* held that Plaintiffs lacked both Article III and prudential standing, the Second Circuit decision affirming the district court turned only on the issue of prudential standing. *U.S. Bank IV*, 2021 WL 4515256, at *1.

The issue before this Court is whether, given the fact that the same assignments to the Plaintiffs from the indenture trustees are at issue here, the Second Circuit's summary opinion in *U.S. Bank IV* precludes Plaintiffs from litigating in these cases whether they have prudential standing to sue BNYM. To conclude that the decision in *U.S. Bank IV* has preclusive effect, this Court must determine that (1) prudential standing, based on the same facts as are at issue here, was raised in *U.S. Bank IV*; (2) the issue was actually litigated and decided in *U.S. Bank IV*; (3) Plaintiffs had a full and fair opportunity to litigate prudential standing in that case; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Cayuga Nation*, 6 F.4th at 374.[8] The Court finds that all requirements have been met as to both cases, and that, therefore, Plaintiffs are precluded from relitigating the question of whether they have prudential standing.

### A. Prudential Standing Was Raised in *U.S. Bank IV* and Is an Issue Before This Court

Plaintiffs do not dispute that prudential standing was raised before the Second Circuit, but instead argue that their prudential standing is not an issue currently before this Court. Pls. Opp. at 1. Most of this argument hinges on the fact that this Court previously held in the 2014 action that BNYM had waived the affirmative defense of champerty, on which the decision in *U.S.*

---

[8] Although the parties in *Cayuga Nation* were identical to those in the prior preclusive litigation, *see* 6 F.4th at 374, identical parties are not required for a court to find that issue preclusion is appropriate. The standard only requires that the party raising the issue to be precluded was part of the prior, potentially preclusive litigation. *Id.* (citation omitted). Additionally, as discussed *infra* at 8–10, issue preclusion can apply to a non-party if the non-party's interests were adequately represented in the prior litigation. *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95, 2015 WL 5076457, at *5 (S.D.N.Y. Aug. 27, 2015) (citations omitted).

*Bank II* turned. *See* June Order, Dkt. 354 at 1.[9] In so holding, the Court noted at length that "standing and champerty are conceptually and doctrinally distinct," *id.* at 2, and that "BNYM is free to argue that the assignment" of the claims back to Plaintiffs "did not confer standing." *Id.* at 3 (citation omitted).[10] The Court also acknowledged, however, that champerty and standing may be interrelated under certain conditions. *Id.* at 4.

The issue here, therefore, is not BNYM's champerty defense, *see* Pls. Opp. at 1, which remains waived in the 2014 action, but rather Plaintiffs' affirmative obligation to establish that they have standing. *Rajamin*, 757 F.3d at 84–85. As BNYM argues, the Second Circuit's decision turned not on champerty as an affirmative defense but on how engaging in champerty affected the existence *vel non* of standing — something the Court acknowledged in its June order could be a possibility. *U.S. Bank IV*, 2021 WL 4515256 at *2 ("Plaintiffs cannot point to sufficient facts" to show a "preexisting proprietary interest" to confer standing); June Order at 4. The Court is sympathetic that Plaintiffs may feel like this is a distinction without a difference,[11] but it is a relevant distinction nonetheless.

As noted above, the Second Circuit considers prudential standing to be part of subject-matter jurisdiction, which merits *sua sponte* evaluation, *Thompson*, 15 F.3d at 248 (citing *Warth*, 422 U.S. at 500); additionally, a district court may raise issue preclusion *sua sponte* even if the issue that could potentially be precluded is not squarely before the Court. *Rosenberg*, 2020 WL 1953627, at *2. Whether the bulk of BNYM's summary judgment motion in the 2014 action

---

[9] This affirmative defense was not waived in the 2018 action; BNYM raised it in its Amended Answer. *See* Am. Answer at 16, No. 18-CV-1194.

[10] Defendant made this very argument in support of its motion for summary judgment in the 2014 action. *See* Def. Supp. Mem., Dkt. 374 at 1–5; Def. Reply, Dkt. 388 at 4–5.

[11] Plaintiffs argue as much in their opposition to summary judgment in the 2014 case. Pls. Opp., Dkt. 378 at 7–8.

focuses on other arguments is, therefore, irrelevant. Pls. Opp. at 5. Nonetheless, it bears repeating that Defendant did raise the issue of prudential standing in its motion for summary judgment. *See*, *e.g.*, Def. Supp. Mem., Dkt. 374 at 1–5.

For the same reasons, it matters not that the 2018 action is not yet at the summary judgment stage: because standing is a threshold matter that determines whether the Court has the power to entertain the case, it is appropriate to reach this issue at this time. *Thompson*, 15 F.3d at 248 (citing *Warth*, 422 U.S. at 500).

**B. Prudential Standing Was Actually Litigated and Decided in *U.S. Bank IV***

Plaintiffs do not contest that prudential standing was actually litigated and decided by the Second Circuit. *See generally* Pls. Opp. at 5–6. Therefore, the second prong of issue preclusion is met. *Cayuga Nation*, 6 F.4th at 374.

**C. Plaintiffs Had a Full and Fair Opportunity to Litigate Prudential Standing**

As to all of the entities that are Plaintiffs in these cases and that were plaintiffs in *U.S. Bank IV*, the opportunity to litigate prudential standing was obviously available; it was litigated and decided in *U.S. Bank II*, and they appealed the adverse decision to the Second Circuit, where the issue was decided in *U.S. Bank IV*. Plaintiffs do point out, however, that Blue Heron Funding V Ltd. ("Blue Heron V"), a Plaintiff in these cases, was not a plaintiff in *U.S. Bank IV*. Pls. Opp. at 6.[12] But the opportunity to litigate can be satisfied when, as here, the party in question is controlled by a party in the related action. The Second Circuit applies the doctrine of privity "with flexibility" when it comes to issue preclusion; so long as "the interests of the nonparty were adequately represented," the third prong of issue preclusion can be satisfied.

---

12 The availability of collateral estoppel relative to Blue Heron V was also contested in the parties' summary judgment briefing. Pls. Rule 56.1 Counterstmt. at 18–19.

*Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95, 2015 WL 5076457, at *5 (S.D.N.Y. Aug. 27, 2015) (internal quotation marks and citation omitted).

Plaintiffs contest whether they have any control over Blue Heron V and argue that corporate affiliation alone does not give rise to the privity necessary for collateral estoppel. Pls. Opp. at 6 (collecting cases). But Phoenix Light admits that it owns more than 50 percent of the controlling class of notes issued by Blue Heron V. Fourth Am. Compl. ¶ 17. Even if Blue Heron V is its own special purpose vehicle, *see id.* ¶ 18, its rights were inextricably wound up in Plaintiffs' litigation of the *U.S. Bank* cases. The Court agrees with Magistrate Judge Netburn's holding in her R&R in a similar RMBS case involving many of the same Plaintiffs that, because Blue Heron V is party to the same assignments, its "ability to bring a breach of contract claim [is] 'derived from the identical arrangement' relied upon by the" *U.S. Bank IV* plaintiffs. R&R, Dkt. 645 at 16, *Phoenix Light SF Limited et al. v. Wells Fargo Bank, N.A.*, No. 14-CV-10102. This creates "sufficient privity" with the *U.S. Bank IV* plaintiffs "such that the litigation of the issue by [those] prior litigant[s] estops the non-party from later seeking to re-litigate that same issue." *Id.* (cleaned up).[13]

Additionally, while Plaintiffs raise other arguments that the Second Circuit did not consider that they would hypothetically make in this Court, *see* Pls. Opp. at 8–10,[14] the issue for

[13] Even if Blue Heron V were not in privity with Plaintiffs, the Court would find that it lacked prudential standing for substantially the same reasons the Second Circuit articulated in *U.S. Bank IV*.

[14] In particular, Plaintiffs argue that the prohibition on champerty only applies to strangers to an underlying transaction who lack any preexisting proprietary interest; they assert the prohibition is inapplicable to them because they had a valid pre-existing interest in the securities at issue. Pls. Opp. at 8 (citing *Tr. for Certificateholders of Merrill Lynch Mortg. Invs. v. Love Funding Corp.*, 13 N.Y.3d 190, 199 (2009)). The Second Circuit determined that Plaintiffs did not "point to sufficient facts in the record" to establish that they possessed a pre-existing interest and that the argument had been waived because Plaintiffs failed to raise it at the district court level. *U.S. Bank IV*, 2021 WL 4515256, at *2. This Court need not wade into the thicket of this issue; Plaintiffs could have raised this argument when *U.S. Bank* was being litigated at the district court level but failed to do so. *Wyly v. Weiss*, 697 F.3d 131, 143 (2d Cir. 2012) (holding choice not to attend fairness hearing did not prevent issue-preclusive effect of result, as parties had the opportunity to attend). That Plaintiffs failed to take advantage of the opportunity to present

issue preclusion is whether they were afforded the opportunity to raise arguments in the prior proceeding, not whether they actually raised them. *Cayuga Nation*, 6 F.4th at 374. Therefore, the third prong of issue preclusion is met.

**D. The Resolution of Prudential Standing Was Essential to the Second Circuit's Holding**

There is no room to argue whether prudential standing guided the Second Circuit's decision in *U.S. Bank IV*; indeed, it was the entire decision.

In sum, because the Second Circuit in *U.S. Bank IV* held that the Plaintiffs lacked prudential standing because the assignments from the CDO Trustees were not valid (because they were champertous), and because Plaintiffs' standing in these cases is based on those very same assignments obtained for the very same reasons, they cannot establish that they have prudential standing in either action before this Court.[15]

---

that argument to Judge Broderick does not mean they were not given the opportunity to do so. Accordingly, their current desire to make that argument does not change the issue preclusion analysis.

[15] The Court also notes that it need not rely on issue preclusion in order to conclude that Plaintiffs lack prudential standing in these cases because the Second Circuit's reasoning would necessitate the same outcome under a fresh analysis. It bears noting that, prior to the *U.S. Bank IV* decision, case-law almost unanimously supported BNYM's argument that the granting clauses in the CDO Indentures assigned to the CDO Indenture Trustees *all* of Plaintiffs' rights in the underlying RMBS securities, *see, e.g.*, *Triaxx Prime CDO 2006-1 v. Bank of N.Y. Mellon*, 2017 WL 1103033, at *5 (S.D.N.Y. Mar. 21, 2017), *aff'd sub nom. Triaxx Prime CDO 2006-1 v. U.S. Bank, N.A.*, 741 F. App'x 857 (2d Cir. 2018); *Triaxx Prime CDO 2006-1 v. Ocwen Loan Servicing*, 762 F. App'x 601, 609 (11th Cir. 2019); *CRAFT EM CLO 2006-1, Ltd. v. Deutsche Bank*, 34 N.Y.S.3d 7, 8 (N.Y. App. Div. 2016); *U.S. Bank I*, 2015 WL 2359358, at *2; *U.S. Bank II*, 2020 WL 1285783, at *11–*16, rendering the assignment of litigation rights back to Plaintiffs, made so that they could pursue these cases, champertous.

Plaintiffs argue that, notwithstanding the long line of cases holding that they assigned to the CDO Indenture Trustees all of their rights in the underlying RMBS securities, they had a preexisting propriety interest in the RMBS securities that shields the assignment of litigation rights back to them from being champertous. Pls. Opp. at 8–10. But the case law Plaintiffs rely on stands only for the proposition that a preexisting proprietary interest allows for an assignment solely for the purpose of litigation to be non-champertous; it does not determine what constitutes a valid preexisting proprietary interest in the first instance. *Love Funding Corp.*, 13 N.Y.3d at 199.

In light of the overwhelming case-law holding that the granting clauses in the CDO Indentures eliminated all of Plaintiffs' rights in the underlying securities, Plaintiffs' argument that the assignments back to them were not champertous because they had preexisting "proprietary interests in the RMBS," Pls. Opp. at 8, is not persuasive. Despite their argument otherwise, *see supra* n.14, Plaintiffs had no legal title to the RMBS certificates after they were assigned to the CDO Indenture Trustees. Therefore, although Plaintiffs would have had prudential standing if the certificates had been validly reassigned to them, Plaintiffs' argument founders on what constitutes a "valid"

## III. Other Considerations

Plaintiffs argue that two other factors weigh against applying issue preclusion; the Court is persuaded by neither.

First, Plaintiffs argue that the "issue of whether a CDO issuer can accept an assignment from its indenture trustee is purely legal" and that purely legal questions are not subject to collateral estoppel. Pls. Opp. at 7.[16] This misstates both what the Second Circuit decided and the record before the court. The Court of Appeals' decision was rendered based on the factual record in *U.S. Bank II*; the district court found that "[t]he parties' papers, supporting declarations, and exhibits demonstrate that there is no genuine material factual dispute as to Plaintiffs' purpose in seeking the assignments in question." *U.S. Bank II*, 2020 WL 1285783, at *12. The Second Circuit expressly rendered its judgment "[b]ased on the factual findings of the District Court." *U.S. Bank IV*, 2021 WL 4515256, at *1. Thus, there is no dispute that the reason the litigation rights were reassigned to Plaintiffs was critical to the Second Circuit's holding. The district court concluded, based on discovery taken in that case, that the reason for the reassignment was to pursue litigation against the RMBS Trustees. *U.S. Bank II*, 2020 WL 1285783, at *5–*6. As a result, there can be no genuine dispute that the sole purpose of the assignments was to allow Plaintiffs to pursue these cases. *Id.* at *5–*6, *12; R&R, Dkt. 645 at 10, *Phoenix Light SF Limited et al v. Wells Fargo Bank, N.A.*, No. 14-CV-10102; *U.S. Bank IV*, 2021 WL 4515256, at *1.

---

reassignment. In New York, an assignment made "with the intent and for the primary purpose of bringing a lawsuit" is not valid. *U.S. Bank IV*, 2021 WL 4515256, at *1 (internal quotation marks and citation omitted). The lack of a valid assignment therefore deprives Plaintiffs of prudential standing. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l,* 790 F.3d 411, 420–21 (2d Cir. 2015). The undisputed facts underlying the parties' summary judgment briefings alone would lead the Court to that conclusion, and that conclusion, in turn, would be preclusive in the 2018 action, necessitating its dismissal as well.

[16] Plaintiffs raised a similar argument in their opposition to BNYM's summary judgment motion in the 2014 action. *See* Pls. Opp., Dkt. 378 at 10.

Second, Plaintiffs argue that New York courts prevent "the application of collateral estoppel when the judgment was supported by alternate grounds, either of which would have disposed of the action entirely." Pls. Opp. at 7 (citation omitted). This argument seemingly relies on the fact that the district court decision in *U.S. Bank II* turned on Article III *and* prudential standing — something Plaintiffs also argued in their opposition to Defendant's motion for summary judgment in the 2014 action. Pls. Opp., Dkt. 378 at 9. But the Second Circuit's holding was not made in the alternative: it reached only the issue of prudential standing. BNYM does not argue that collateral estoppel exists as to whether Plaintiffs have Article III standing. Therefore, Plaintiffs' argument is misplaced, regardless of New York law. Further, while Plaintiffs argue that *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381–82 (2d Cir. 2021), supports their claim to have Article III standing, *see* Pls. Opp. at 4, the Court need only determine that prudential standing does not exist to reach the conclusion that these cases must be dismissed. *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014) (citation omitted).[17]

**CONCLUSION**

For the foregoing reasons, the cases at Docket Nos. 14-CV-10104 and 18-CV-1194 are dismissed. The Clerk of Court is respectfully directed to terminate the open motions in each docket and close both cases.

**SO ORDERED.**

**Date: January 7, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

[17] Because the Court finds that Plaintiffs lack prudential standing, it does not reach Article III standing.